PAUL BERUBE,                              :
      Plaintiff,                      :
                               :
v.                                       :          CIVIL ACTION NO.
                               :          3:06-cv-00197 (VLB)
GREAT ATLANTIC & PACIFIC TEA             :
COMPANY, INC.,                           :
      Defendant.                      :          July 29, 2010

## MEMORANDUM OF DECISION DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT [Doc. #83]

## I. INTRODUCTION

The plaintiff, Paul Berube ("Berube), filed this action against the defendant, Great Atlantic & Pacific Tea Company, Inc. ("A&P"), following the A&P's termination of his employment as a liquor store manager. Berube alleged that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-51 et seq. Berube also asserts three Connecticut common law causes of action for breach of contract, promissory estoppel, and negligent misrepresentation.

On June 28, 2007, A&P filed a motion for summary judgment as to all of Berube's claims. See Doc. #25. By Memorandum of Decision dated February 25, 2008, this Court granted summary judgment in favor of A&P as all of Berube's federal claims, and declined to exercise supplemental jurisdiction over Berube's state law claims. See Berube v. Great Atlantic & Pacific Tea Co., Inc., No. 3:06-cv-

00197 (VLB), 2008 WL 534767 (D. Conn. Feb. 25, 2008). Berube appealed the dismissal of his ADEA and ERISA claims, but did not contest summary judgment on his ADA claim. On October 15, 2009, the Second Circuit affirmed the decision in part, and vacated and remanded in part. See Berube v. Great Atlantic & Pacific Tea Co., Inc., 348 Fed. Appx. 684 (2d Cir. 2009). Specifically, the Second Circuit affirmed the dismissal of Berube's ERISA claim, and reversed as to this Court's finding that Berube failed to make out a *prima facie* case of discrimination under the ADEA and remanded for further proceedings consistent with its opinion, including application of the three-part burden-shifting framework laid out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Following the Second Circuit's decision, on January 1, 2010, A&P filed a renewed motion for summary judgment, arguing that Berube's ADEA claim should be dismissed because A&P has articulated a legitimate, nondiscriminatory reason for terminating Berube and he cannot establish that A&P's reason was a pretext for discrimination. See Doc. #83. A&P also seeks summary judgment as to Berube's state law claims. Berube filed his opposition on February 5, 2010. See Doc. #87. For the reasons given below, A&P's motion is DENIED.

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "construe[s] the evidence in the light most

favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

## III. DISCUSSION

### A. ADEA Claim

The Court assumes familiarity of the facts of this case, which were recounted both by this Court in its February 25, 2008 Memorandum of Decision, and by the Second Circuit in its November 5, 2009 Order; however, specific facts will be discussed as needed throughout this decision. See Berube v. Great Atlantic & Pacific Tea Co., Inc., No. 3:06-cv-00197 (VLB), 2008 WL 534767, at *1 (D. Conn. Feb. 25, 2008); Berube v. Great Atlantic & Pacific Tea Co., Inc., 348 Fed.

Appx. 684, 685 (2d Cir. 2009).

On summary judgment, Berube's ADEA claim is analyzed under the three-part burden-shifting framework laid out by the Supreme Court in <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-06.  To survive summary judgment under this standard, "a plaintiff first bears the 'minimal' burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." <u>McPherson v. New York City Dept. Of Education</u>, 457 F.3d 211, 215 (2d Cir. 2006).

The Second Circuit held that Berube "has proffered sufficient evidence to make out a *prima facie* claim of discriminatory intent by demonstrating that younger, similarly-situated employees received progressive discipline for transgressions of comparable seriousness while he did not."  <u>Berube</u>, 348 Fed. Appx. at 686.  The Second Circuit expressed no view as to steps two and three of the <u>McDonnell Douglas</u> analysis, and directed the Court to apply these steps. Therefore, in accordance with <u>McDonnell Douglas</u>, the Court now considers whether A&P has proffered a legitimate, nondiscriminatory reason for terminating Berube, and if so, whether Berube has submitted sufficient evidence that the reason was pretextual to survive summary judgment.

### 1.  <u>Reason for Discharge</u>

Once the Plaintiff establishes a *prima facie* case of discrimination, the

**4**

burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  To meet this burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons."  Id.  Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id.  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]."  Id.

A&P contends that it has satisfied its burden to put forth a legitimate, non-discriminatory business reason for its action.  Specifically, A&P states that Berube was terminated due to his failure to meet performance expectations by willfully refusing to follow proper procedures for sales and inventory reporting.  In opposition, Berube argues that A&P cannot satisfy its burden because it is unable to identify the individual who actually made the decision to terminate his employment, and therefore cannot produce any admissible evidence as to the actual reason that motivated A&P's decision to terminate his employment.

Failure to satisfy performance standards is a legitimate, non-discriminatory reason for an adverse employment decision.  See, e.g., Chukwurah v. Stop & Shop Supermarket Co. LLC, 354 Fed. Appx. 492, 494-95 (2d Cir. 2009) (noting that plaintiff's poor performance was a legitimate, nondiscriminatory reason for his discharge); Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 194 (D. Conn. 2007)

**5**

(holding that defendant provided non-discriminatory reasons for its actions by producing evidence that plaintiff failed to improve his job performance despite repeated counseling and written warnings); Bogues v. Town of Trumbull, No. 3:03-cv-2205, 2005 WL 2002487, at *(D. Conn. Aug. 18, 2005) ("An employer's dissatisfaction with the quality of an employee's work is a legitimate non-discriminatory reason [for an adverse employment action]."); Coccareo v. AT&T Corp., No. 3:03-cv-914 (DJS), 2005 WL 1711967, at *4 (D. Conn. July 20, 2005) ("[Defendant] has satisfied its burden to articulate a legitimate, non-discriminatory reason for discharging [Plaintiff]:  [Plaintiff] performed his job poorly.").

A&P has presented the following evidence in support of its claim that it terminated the Plaintiff for failing to follow proper procedures for sales and inventory reporting.  In 2003, A&P changed its invoicing procedures based upon recommendations received from BevMax, a consulting company that A&P had retained to assist with improving the overall functioning of A&P's liquor division.  The change in procedures was discussed at monthly manager meetings with liquor store division managers.  A&P claims that Berube attended meetings in which the issue of properly netting invoices was discussed.  See Ciccone Tr., Doc. #65-6, at 45; De Mola Tr., Doc. #65-7, at 35.  In addition, A&P's District Manager, Mary Ellen Ciccone, testified that she had numerous conversations with Berube in which she notified him of the new procedures.  See Ciccone Tr., Doc. #65-6, at 44-45.  Berube initially failed to comply with the new procedures.  According to A&P, Berube's noncompliance became apparent in September 2003, when Ciccone

conducted an audit of the Bristol store where Berube was the store manager.  Id. at 84-85.  Ciccone testified that, after auditing Berube's invoices, she specifically admonished him that he needed to stop following the old procedures.  Id. at 45. She decided to transfer Berube from A&P's Bristol store to the Suffield store, with the hope that he could start over in a new location and adapt more easily to the new procedures in a smaller store.  Id. at 85.  Subsequently, in November 2003, Ciccone conducted an audit of the Suffield store and learned that Berube was still using the old procedures.  Id. at 23-24.  She reported Berube's conduct to Nicholas Iadevaio in A&P's Human Resources Department.  Ciccone also reported her findings to Diego De Mola of BevMax, who, in turn, prepared a memorandum to Iadevaio which described Ciccone's findings and attached some of the invoices demonstrating Berube's improper conduct.  Id. at 85; De Mola Tr., Doc. #65-7, at 74-76.  On December 1, 2003, Iadeviao and De Mola met with Berube to discuss his failure to follow the new inventory procedures.  Berube Tr., Doc. #65-5, at 145-46. At the meeting, Iadevaio informed Berube that he was not recording his invoices correctly and advised him that, as a result of his conduct, he was being suspended from employment pending further investigation.  Id. at 150-51.  A few days after the meeting, Berube reached out to De Mola in an effort to "get on his good graces" and "try to resolve this issue" with his invoices.  Id. at 153.  De Mola told him that the issue would be discussed later.  Id. at 153-54.  Approximately three weeks later, A&P terminated Berube's employment.  Id. at 187.

Berube contests A&P's version of the events leading to his termination.

While A&P contends that there were monthly meetings at which the new inventory procedures were discussed, and that Ciccone discussed with him his failure to adhere to the new procedures, Berube claims that he can recall attending only one manager meeting in 2003 and the new procedures were not addressed at that meeting. He further contends that the first time that Ciccone instructed him that he needed to change the way he retailed invoices was on November 15, 2003, after he had been transferred from A&P's Bristol store to the Suffield store. He does admit that he heard rumors from other managers and salespeople beginning in September 2003 that A&P wanted store managers to change the way that they retailed invoices. See Berube Tr., Doc. #65-5, at 126-27. It is undisputed that Berube complied with Ciccone's instruction to use the new procedures after the November 2003 audit. Berube also claims that Ciccone never performed an audit of the Bristol store in September 2003 as A&P says she did, and therefore argues that his failure to follow the new inventory procedures at the Bristol store could not have supplied the motivation for his transfer to Suffield and his ultimate suspension and termination. In support of this claim, Berube cites the above-referenced memorandum from De Mola to Iadevaio, which states that inventory was taken at the Bristol store after the Plaintiff was transferred to Suffield. See De Mola Memo, Doc. #87-8.

Based upon the evidence submitted by A&P supporting its claim that Berube failed to comply with the new inventory procedures, the Court concludes that A&P has met its burden of articulating a legitimate, non-discriminatory reason

8

for terminating Berube's employment.  While Berube contests A&P's version of the relevant events, the Supreme Court has made clear that "[t]he burden is one of production, not persuasion; it can involve no credibility assessment."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000) (internal quotation marks omitted).  In this case, A&P has produced ample evidence of a legitimate, non-discriminatory reason for discharging Berube in the form of deposition testimony as well as documentary evidence.

Nevertheless, Berube argues that A&P cannot satisfy its burden because it is unable to identify the individual who actually made the decision to terminate his employment.  Berube points out that the three individuals whom A&P claims participated in, approved, or had knowledge of the reasons supporting A&P's decision to terminate Berube's employment deny making the ultimate decision. This argument is unpersuasive, as it is not supported by the authority that Berube cites.

For example, in support of this proposition, Berube cites <u>Halfond v. Legal Aid Society</u>, 70 F. Supp. 2d 155, 162 (E.D.N.Y. 1998), wherein the only evidence offered by the defendant to support the plaintiffs' termination were anonymous evaluations and a Committee statement that they "were not as strong as other supervisors" and "could not function effectively as a staff attorney."  The Court found these statements to be "vague articulations" that did not provide a "clear and reasonably specific" basis for termination, and did not rest its holding on the fact that an ultimate decision maker was not identified.  <u>Id.</u> at 162-63 (quoting

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 258 (1981)).  Similarly, in <u>Franci v. Avoc Corporation</u>, 538 F. Supp. 250 (D. Conn. 1982), another case cited by Berube, the Court entered judgment for the plaintiffs where there was direct evidence from top management officials that the defendant company had a goal of getting rid of older employees and the only reason given by management for its decision to layoff the plaintiff, as opposed to other individuals, was "reducing costs."  <u>Id.</u> at 257.  Unlike in these cases, here A&P has offered evidence to support a clear and specific non-discriminatory reason for terminating Berube; namely, his failure to follow the new inventory procedures adopted by A&P.

Finally, in <u>Jacobs v. General Electric Company</u>, 880 A.2d 151, 159-60 (Conn. 2005), the Connecticut Supreme Court held that the trial court erred in admitting the testimony of two employees who did not participate in the decision to layoff the plaintiff.  The Court reasoned that the employees did not have firsthand knowledge of the basis for the decision, and therefore their testimony as to their employer's motivation for the layoff decision was speculative and not admissible as lay opinion testimony.  <u>Id.</u>  Here, by contrast, the A&P has produced the deposition testimony of three individuals - Ciccone, Iadevaio, and De Mola - who testified that Berube was instructed to follow the new inventory procedures, that he failed to do so after numerous conversations with Ciccone about the new procedures, and that he was transferred to another store and suspended as a result after audits of both stores he managed revealed his insubordination.  Furthermore, it is undisputed that Iadevaio, a member of A&P's Human Resources

Department, communicated both the suspension and termination decisions to Berube.  In addition, A&P has produced documentary evidence which supports its proffered basis for Berube's termination.  First, Iadeviao's Weekly Services Update for Week Ending 12/12/03 expressly references Berube's termination for "inventory issues."  Doc. #91-2, Exh. A.  Second, Iadeviao's 2004 Performance Appraisal states that he "successfully managed poor performers out . . . P. Berube - Liquor."  Doc. #91-2, Exh. B.  Third, De Mola's November 25, 2003 memorandum to Iadevaio documented Ciccone's findings regarding Berube's failure to follow the new inventory procedures.  Doc. #91-2, Exh. C.

The fact that no one single individual takes ownership of the ultimate decision to terminate Berube's employment does not warrant ignoring the relevant, admissible evidence submitted by A&P in support of its claim that Berube was transferred, suspended, and finally terminated for his failure to comply with A&P's new inventory procedures.  Therefore, the Court must proceed to the third step of the McDonnell Douglas analysis and consider whether A&P's reason was a pretext for discrimination.

### 2.  Pretext

The plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him.  See Burdine, 450 U.S. at 253.  Once the defendant has produced sufficient evidence to support a legitimate, nondiscriminatory reason for termination, the plaintiff must then attempt to satisfy this burden by being given the "opportunity to prove by a preponderance of the

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. The plaintiff may demonstrate that he was the victim of intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256. "Moreover, although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." Reeves, 530 U.S. at 143 (internal citations and quotation marks omitted).

If there is sufficient evidence of pretext, the Court must then analyze whether, based upon the record as a whole, the plaintiff can satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 149). In Reeves, the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148 (emphasis added). The Supreme Court stated, however, that such a showing will not always be adequate to sustain a jury's finding of liability. Id. For instance, the Supreme Court noted that "an employer would be entitled to judgment as a matter of law if the record

conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred."  Id.  Therefore, the Supreme Court endorsed a case-by-case approach to determining whether sufficient evidence exists to go to a jury on the question of intentional discrimination.  As the Supreme Court explained, "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and may be considered on a motion for judgment as a matter of law."  Id.

Second Circuit cases interpreting Reeves have clarified that a case-by-case approach involving a review of the entire record is necessary to determine whether sufficient evidence exists to go to a jury on the question of intentional discrimination.  For example, in Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000), the Second Circuit explained:

> Reeves prevents courts from imposing a per se rule requiring in all instances that an ADEA claimant offer more than a prima facie case and evidence of pretext . . . .  [T]he Supreme Court's decision in Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.

See also Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 382 (2d Cir.

2001) ("The task . . . is to examine the entire record and, in accordance with Reeves, make the case-specific assessment as to whether a finding of discrimination may reasonably be made."); James v. New York Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000); Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2000).  The Second Circuit has expressed the view that "only occasionally will a *prima facie* case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination" but that "such occasions do exist."  Zimmerman, 251 F.3d at 376.

In this case, as A&P correctly points out, the record does not contain any direct evidence that A&P intentionally discriminated against Berube because of his age.  This does not end the inquiry however, because, as the Supreme Court expressly stated in Burdine and reiterated in Reeves, a plaintiff may also establish pretext by showing that the employer's reason for termination is "unworthy of credence."  450 U.S. at 253; 530 U.S. at 143.  Here, Berube has produced the following evidence of pretext.  First, as discussed above, he testified during his deposition that the first time he was instructed that he needed to change the way he retailed invoices was on November 15, 2003, after he had been transferred from A&P's Bristol store to the Suffield store.  As the Second Circuit recognized, Berube identified at least some documentary evidence supporting his claim that the purported audit of the Bristol store occurred not in September 2003 when A&P claims it took place, but after he had been transferred to Suffield.  See Berube, 348 Fed. Appx. at 685 n.2.  The evidence cited by Berube is the November 25, 2003

Memorandum from De Mola to Iadeviao which documented Ciccone's findings

regarding Berube's failure to follow the new inventory procedures. Doc. #91-2,

Exh. C. In the Memorandum, De Mola wrote as follows:

> Paul Berube was the manager of Store 104 and was transferred to store
> 112 by the end of October. <u>After</u> his transfer, inventory was taken at the
> store and it had a positive swing of $15k plus. As a result of the swing,
> the DM's made a quick audit to the invoices in order to confirm that the
> invoices were retailed correctly.

<u>Id.</u> (emphasis added). Viewed in a light most favorable to Berube, the import of

the Memorandum is that A&P conducted an audit of his former Bristol store after

transferring him, and then used the results of the audit as a post-hoc justification

for the transfer decision as well as the ultimate decision to suspend and

eventually terminate him. If the jury were to believe, as Berube claims, that he

never received an instruction to use the new inventory procedures until November

15, 2003, then A&P's purported reason for terminating him was pretextual since it

is undisputed that he complied with the new procedures following that date.

Second, Berube claims that A&P's reason for his discharge was pretextual

because no single individual at A&P takes responsibility for making the final

decision to terminate his employment. <u>See</u>, <u>e.g.</u>, <u>Paup v. Gear Products, Inc.</u>, 327

Fed. Appx. 100, 112 (10th Cir. 2009) (finding pretext based upon failure of the

defendant to name individuals who made employment decisions because in such

circumstances a "crucial factor in the termination process . . . is left a mystery");

<u>Coburn v. Rockwell Automation, Inc.</u>, 238 Fed. Appx. 112, 122 (6th Cir. 2007)

(holding, in an age discrimination suit, that "[a] reasonable jury could infer that if

[the employer] cannot even give a straight answer about who recommended [the plaintiff] for the RIF list, it is trying to hide something"); <u>Tinker v. Sears, Roebuck & Co.</u>, 127 F.3d 519, 523 (6th Cir. 1997) (concluding that inconsistent statements by different managers as to "who was actually responsible for the decision to fire" the plaintiff raised a genuine issue of material fact regarding the employer's proffered reason for termination).

While this argument alone may not provide strong evidence of pretext, combined with evidence that the audit at the Bristol store did not occur until after Berube was transferred to Suffield and that he complied with the new procedures upon being instructed to do so on November 15, 2003, the Court concludes that Berube has made a sufficient showing that A&P's proffered explanation for his termination is "unworthy of credence." <u>Burdine</u>, 450 U.S. at 256.

Having concluded that Berube has produced evidence of pretext, the Court must now determine whether, based upon the entire record, there is sufficient evidence for the jury to make a finding of intentional discrimination. <u>See Schnabel</u>, 232 F.3d at 90.

The Court finds that there is sufficient evidence of intentional discrimination in this case. As discussed previously, the Second Circuit concluded on appeal that Berube established a *prima facie* case of discrimination. <u>Berube</u>, 348 Fed. Appx. at 686. The Second Circuit based this decision on evidence proffered by Berube "demonstrating that younger, similarly-situated employees received progressive discipline for transgressions of comparable seriousness while he did

not." Id. A&P's general practice was to provide a four-step disciplinary process for continuing violations, which consisted of a verbal warning, a written warning, a suspension, and finally termination. The Second Circuit noted that there are at least four comparators - Brian Badlowski, Ryan Fleet, Sid Prasad, and Frank Sengotta - who were liquor store managers younger than Berube and who were cited for violating A&P's workplace rules around the same time that Berube was terminated. Id. Each of these comparators received written warnings, and none were terminated. Id. Berube, on the other hand, has produced evidence suggesting that he never received a verbal or written warning prior to his termination. Moreover, A&P does not contend that it gave Berube a written warning or that he persisted in failing to adhere to the inventory procedures after the November 2003 audit at the Suffield store to which he was transferred. In fact, the record shows that he adhered to the new procedures in the weeks following the November 2003 audit and prior to his suspension.

Notwithstanding the Second Circuit's decision, A&P continues to maintain that its different treatment of the comparators identified by Berube does not provide evidence of discrimination because the issues for which they were counseled were not related to a failure to comply with the new inventory procedures and thus they were not similarly situated. However, the Second Circuit expressly found that the differences between the evinced conduct of the comparators and Berube "are not so significant that a reasonable juror would be precluded from deciding that these employees engaged in conduct of comparable

seriousness." Id. at 686.  Moreover, A&P's characterization of Berube's conduct as an egregious violation of core company values is belied by the testimony of its own witnesses, including Ciccone and Eric Dorne, Chief Information Officer at A&P, who engaged in the inventory practices that Berube employed for many years prior to the change in policy and did not consider it to be dishonest or inappropriate in any way.  See Dorne Tr., Doc. # 87-6, at 23-25; Ciccone Tr., Doc. #87-7, at 45-47.  Indeed, A&P's counsel has characterized the practice followed by Berube under which he maintained records of his store's sales activity and inventory in a manner that artificially inflated the report of the store's actual inventory as "a longstanding accepted and required inventory practice" prior to the change recommended by BevMax in 2003.  Def. Mem. at 2.

Combined with the aforementioned evidence of pretext, the evidence supporting Berube's prima facie case is sufficient under the standard set forth by the Supreme Court in Reeves to permit the ADEA claim to go to the jury on the question of intentional discrimination.  While A&P has produced evidence that it terminated Berube for a non-discriminatory reason, the Court does not view this evidence as being so overwhelming that summary judgment is warranted, particularly in light of the countervailing testimonial and documentary evidence cited by Berube in support of his assertion that A&P's explanation is untrue. Given the disputed issues of material fact present in this case regarding the true reason for Berube's termination, this case is best submitted to the jury to assess the credibility of the parties' respective witnesses and, based upon their

assessment, to reach a decision as to whether Berube was terminated because of his age. Accordingly, A&P's renewed motion for summary judgment is denied as to Berube's ADEA claim.

## B. State Law Claims

A&P also seeks summary judgment on Berube's state law claims. The Court previously declined to exercise supplemental jurisdiction over these claims because summary judgment was granted as to all of Berube's federal claims. See Berube, 2008 WL 534767, at *3. Since the Court has now denied summary judgment as to Berube's federal ADEA claim on remand, it has supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a). Furthermore, although not invoked by Berube as a basis for jurisdiction, it appears that the Court also has diversity jurisdiction over Berube's state law claims pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states.[1] Therefore, the Court will now proceed to examine Berube's state law claims in turn.

### 1. CFEPA Claim

A&P first moves for summary judgment on Berube's CFEPA claim, arguing that Berube is not disabled within the meaning of the CFEPA, that A&P did not discriminate against Berube because of any alleged disability, and that Berube cannot establish that the reason given for his termination was pretextual.

---

[1] Berube is a Connecticut resident, whereas A&P is incorporated in Maryland and has its principal place of business in Montvale, New Jersey.

Claims under the CFEPA are analyzed using the same burden shifting framework set forth by the Supreme Court in <u>McDonnell Douglas</u> for use in Title VII, ADA, and ADEA cases. <u>See</u> <u>Levy v. Comm'n on Human Rights & Opportunities</u>, 236 Conn. 96, 106-07 (1996). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. <u>Id.</u> at 108. Once a *prima facie* case is established, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> If the defendant offers such a reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual. <u>Id.</u>

To establish a disability discrimination claim under the CFEPA, a plaintiff must first show by a preponderance of the evidence that (1) his employer is subject to the CFEPA; (2) he was disabled within the meaning of the CFEPA; (3) he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. <u>See</u> <u>Graham v. Boehringer Ingelheim Pharmaceuticals</u>, No. CV040488908S, 2007 WL 3317528, at *14 (Conn. Super. Ct. Oct. 19, 2007) (citing <u>Heyman v. Queens Village Comm. for Mental Health</u>, 198 F.3d 68 (2d Cir. 1999)).

As an initial matter, A&P does not contest that it is an employer subject to the CFEPA. <u>See</u> Conn. Gen. Stat. § 46a-51 (defining "employer" as "any person or employer with three or more persons in such person's or employer's employ").

A&P contends, however, that Berube cannot establish the second, third, and fourth prongs of a CFEPA claim. The Court first addresses A&P's argument that Berube is not disabled within the meaning of the CFEPA.

The CFEPA defines a physical disability as "any chronic physical handicap, infirmity, or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness . . . ." Conn. Gen. Stat. § 46a-51. As the Second Circuit has recognized, the CFEPA's definition of disability is broader than the ADA's in that it does not require an employee to show that his impairment substantially limits one or more of his majority life activities. See Beason v. United Technologies Corp., 337 F.3d 271, 276-78 (2d Cir. 2003). Although the CFEPA does not define the term "chronic" and the Connecticut Supreme Court has not addressed the issue, other courts have defined it to mean "of long duration, or characterized by slowly progressive symptoms; deepseated or obstinate, or threatening a long continuance; distinguished from acute." Shaw v. Greenwich Anesthesiology Associates, P.C., 137 F. Supp. 2d 48, 65 (D. Conn. 2001); see also Gilman Brothers Co. v. Connecticut Comm'n on Human Rights and Opportunites, No. CV950536075, 1997 WL 275578, at *4 (Conn. Super. Ct. May 13, 1997) (finding that employee met the definition of physical disability under the CFEPA where she suffered from carpal tunnel syndrome and tendinitis for one month prior to her termination); Gomez v. Laidlaw Transit, Inc., 455 F. Supp. 2d 81, 88 (D. Conn. 2006) (holding that a reasonable jury could find plaintiff's asthma, which she had since childhood, to be "chronic" and thus qualify as a disability

under the CFEPA even though it did not substantially limit her ability to breath).

Here, It is undisputed that Berube suffered from both diabetes and skin cancer during his employment with A&P. Berube was diagnosed with diabetes in 1995, and continues to suffer from diabetes and related complications today. Berube Tr., Doc. #87-4, at 192-93; Berube Aff., Doc. #87-3, ¶¶ 3-6, 18-29. To treat his diabetes, Berube followed dietary restrictions, checked his blood sugar on a regular basis, and took medication. Id. Berube also developed skin cancer in 2003 during his employment with A&P. Berube Tr., Doc. #87-4, at 96-100, 102, 190-91; Berube Aff., Doc. #87-3, ¶¶ 9-10.[2] In order to eradicate the cancer, he had multiple surgeries over the time period from June to September 2003. Id. Ciccone was aware that Berube suffered from diabetes and skin cancer. Ciccone Tr., Doc. #87-7, at 17-20. However, she refused to provide coverage for him to take time off from work, and therefore he had to report to work on the days that he had the surgeries for skin cancer. Berube Tr., Doc. #87-4, at 96-100; Berube Aff., Doc. #87-3, ¶¶ 11-12. On at least three occasions, he had to leave work because his stitches opened up, causing him to bleed. Id.

A&P argues, however, that Berube is not disabled within the meaning of the CFEPA, and therefore he cannot establish his *prima facie* case, because (1) his diabetes was well-controlled with medication, diet, and exercise; and (2) his skin cancer was fully resolved with four 45-minute surgical procedures that did not

---

[2] Berube also testified that he had skin cancer when he was a child, but indicated that it was not the same type of cancer that he developed in 2003. Berube Tr., Doc. #87-4, at 190-91.

require him to take any time off from work.  The only authority that A&P relies upon in support of this argument is a statement made in *dicta* by Judge Dorsey in Shaw v. Greenwich Anesthesiology indicating that the plaintiff would not qualify as disabled under the CFEPA if her arthritis was controlled when she was on her medication.  137 F. Supp. 2d at 65 n.22.  Judge Dorsey reasoned that, if the plaintiff's condition was fully corrected by medication, she would not have an impairment that "substantially limits a major life activity."  Id.  Thus, as this reasoning makes clear, Judge Dorsey applied the ADA disability standard to the plaintiff's CFEPA claim.  Judge Dorsey nonetheless denied summary judgment because the plaintiff put forth sufficient evidence to create a question of material fact as to whether she did in fact suffer from a disability.  Id. at 65-67.

The language from Judge Dorsey's opinion that A&P relies upon provides no support for its position, however, because Shaw predates the Second Circuit's decision in Beason v. United Technologies Corporation.  As noted previously, in Beason, the Second Circuit concluded that the CFEPA's definition of disability is broader than the ADA's in that it does not require an employee to show that his impairment substantially limits one or more of his major life activities.  337 F.3d at 276-78.  Since Berube is not required to show that he was substantially limited in a major life activity, the Court is not persuaded by A&P's argument that Berube did not suffer from a chronic impairment because his conditions were controlled through treatment during his employment at A&P.  See e.g., Gomez, 455 F. Supp. 2d at 88 n.5 ("Under the CFEPA, plaintiff need not show that her chronic asthma

substantially restricted her ability to breathe.  For this reason, I am not persuaded by defendant's argument that I must consider the availability of corrective measures [to determine whether plaintiff is disabled].").  The evidence presented by Berube is sufficient for a reasonable jury to find that Berube's diabetes and skin cancer are "chronic," and therefore there is a question of material fact as to whether he is disabled under the CFEPA.

A&P's remaining arguments in support of summary judgment on the CFEPA claim also fail.  As noted above in the context of the Court's discussion of the ADEA claim, the Second Circuit held that Berube established a *prima facie* case of discrimination by producing evidence that younger, similarly situated managers were afforded progressive discipline for policy violations of comparable seriousness while he was not.  <u>Berube</u>, 348 Fed. Appx. at 686.  This same evidence gives rise to an inference of discrimination under the CFEPA because the comparators identified by Berube were not disabled.  Further support for Berube's discrimination claim is provided by the fact that the two individuals who replaced Berube - James Hogan and Chris Sawyer - did not suffer from a disability.  <u>See</u> <u>Zimmerman v. Associates First Capitol Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage[.]").  In addition, the sequence of events leading up to the Plaintiff's termination create an inference of discrimination.  A&P transferred, suspended, and ultimately terminated Berube shortly after he underwent multiple surgeries for

skin cancer in 2003, and during the same year that Berube informed Ciccone that he suffered from diabetes.  See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) ("Circumstances contributing to a permissible inference of discriminatory intent may include . . . the sequence of events leading to the plaintiff's discharge . . . or the timing of the discharge . . . .") (internal citations omitted); Gonsalves v. J.F. Fredericks Tool Co., 964 F. Supp. 616, 623 (D. Conn. 1997) (finding that the timing of a written warning issued several months after plaintiff was taken to the hospital established a *prima facie* case of discrimination).

As noted above in the context of the Court's discussion of the ADEA claim, A&P has articulated a legitimate, nondiscriminatory reason for terminating Berube. See supra Section III.A.1.  However, Berube has submitted evidence of pretext which, combined with the evidence in support of his *prima facie* case, is sufficient to allow a reasonable jury to determine that Berube has satisfied his ultimate burden of proving intentional discrimination.  See supra Section III.A.2. Accordingly, summary judgment is denied as to the CFEPA claim.

## 2. Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation

Berube predicates his state law claims for breach of contract, promissory estoppel, and negligent misrepresentation on an alleged promise made by A&P when he was offered the liquor store manager position that he would not be terminated without first being provided with progressive discipline.  A&P moves for summary judgment on three grounds.  First, A&P argues that Berube was not a

member of the union representing non-management employees and therefore was not a party to the collective bargaining agreement between the union and A&P which provided for progressive discipline. Second, A&P argues that the alleged promise to afford progressive discipline was not sufficiently definite because Berube was unable to recall specifically when the promise was made or by whom. Third, A&P argues that even if it did have an obligation to afford progressive discipline to Berube before terminating his employment, his claims fail because it satisfied that obligation.

A&P's first argument is easily dispensable, because Berube is not basing his claims on the terms of the collective bargaining agreement. Instead, he testified that "upper management" at A&P expressly informed him when he was promoted to store manager in 1985 that the progressive discipline policy that applied to union members via the collective bargaining agreement also applied to non-union member employees, including managers. Berube Tr., Doc. #87-4, at 65-66, 235, 244-45. Berube further testified that he would not have accepted the store manager position if he had not been guaranteed progressive discipline. Id. at 244-45.

A&P's second argument is predicated on Berube's inability to provide specific facts regarding the alleged promise to afford him progressive discipline, including his failure to identify precisely when the promise was made, the specific individual who made the promise, the department that the individual who made the promise was in, or even whether the individual was male or female. See Berube

Tr., Doc. #87-4, at 244-45. "Under established principles of contract law, 'an agreement must be definite and certain as to its terms and requirements.'" Suffield Development Associates Ltd. Partnership v. Society for Savings, 243 Conn. 832, 843 (1998) (quoting Presidential Capital Corp. v. Reale, 231 Conn. 500, 506 (1994)). Similarly, "a fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 104 (2003). Finally, "falsity is an essential element of a negligent misrepresentation claim, and [the plaintiff] bears the burden of demonstrating that the defendants made certain representations . . . that were in fact untrue." Daley v. Aetna Life and Cas. Co., 249 Conn. 766, 792-93 (1999). In A&P's view, Berube does not have a viable claim under a breach of contract, promissory estoppel, or negligent misrepresentation theory due to the nebulous circumstances surrounding the alleged promise to afford him progressive discipline. However, Berube's testimony that such a promise was indeed made at the time he accepted his position as a liquor store manager is bolstered by the fact that A&P had a general practice of affording progressive discipline to its managers. See, e.g., Iadeviao Tr., Doc. #87-11, at 34-40; Hogan Tr., Doc. #87-13, at 33-37; Sawyer Tr. 31, Doc. #87-14, at 33-35. Further, as the Second Circuit recognized in its decision on appeal, at least four younger, similarly situated managers received progressive discipline for transgressions of comparable seriousness as Berube's purported misconduct. See Berube, 348 Fed. Appx. at 686. In these circumstances, the

issue of whether A&P undertook an obligation to afford Berube with progressive discipline is an issue best left for the trier of fact.  See <u>Presidential Capital Corp.</u>, 231 Conn. at 507 ("Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of facts.") (internal quotation marks omitted).

Finally, A&P's third argument fails because it is undisputed that he did not in fact receive progressive discipline prior to his termination.  A&P has produced no evidence that it ever provided Berube with a written warning.  Furthermore, Berube testified that he was not provided a verbal warning until November 15, 2003, and it is undisputed that he complied with the new inventory procedures after that date yet he was still suspended and ultimately terminated.  Accordingly, summary judgment is denied as to the breach of contract, promissory estoppel, and negligent misrepresentation claims.

## IV.  <u>CONCLUSION</u>

Based upon the above reasoning, A&P's renewed motion for summary judgment [Doc. #83] is DENIED.  A separate order will be issued scheduling this case for trial.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 29, 2010.

28